IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RONNY DEE TODD and
LISA TODD,

        Plaintiffs
        and Counter Defendants,

vs.                                          CIV No. 12-0114 MCA/GBW

RWI Acquisition LLC
and RWI Construction LLC,

        Defendants and
        Counter Claimants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO QUASH

This matter comes before the Court on Plaintiffs' two motions to quash.  *Docs. 66,*

*70.*  The parties have fully briefed the motions, and the Court has held a hearing.  *Docs.*

*68, 71, 72, 77, 79, 82, 86, 87, 94.*  The first motion to quash addresses a subpoena for

Plaintiffs' personal banking records and their companies' banking records.  The Court

will not quash the subpoena, but will limit the time period for which Defendants may

obtain their personal banking records to the period from January 10, 2010, to April 30,

2012; the Court will neither quash nor limit the subpoena as it applies to the banking

records of Plaintiffs' companies.  The second motion to quash addresses a subpoena for

the records kept by third-party companies of their dealings with Plaintiffs' businesses.

The Court will not quash the second motion, but will set an end date for the materials

sought; the end date will be June 30, 2012 -- three months after the expiry of the noncompete period.[1]

### *Background*

On February 3, 2012, Plaintiffs filed their complaint, alleging a factual background as set forth below.  *Doc. 1.*  Plaintiff R. Todd started the company RWI Construction ("RWI") in 1974 and developed it into a "construction business servicing [its] oil field customers . . . ."  *Id.* ¶ 8.  In 2006-07, Plaintiffs and Sorenson Capital Partners, L.P. ("Sorenson") negotiated and completed the sale of RWI from Plaintiffs to Sorenson.  *Id.* ¶¶ 9-22.  Sorenson formed RWI Acquisition ("RWI(DE)"), and RWI(DE) purchased all the stock of RWI.  *Id.* ¶¶ 9, 20.  The sale of RWI was a complex business transaction involving multiple contracts, including a Stock Purchase Agreement, a Member Agreement, a Subscription Agreement, Employment Agreements, and Restricted Equity Award Agreements.  *Id.* ¶¶ 9-18.  These agreements provided for Plaintiffs to continue working for RWI, included various incentives to encourage their good performance, and included various provisions restricting their ability to compete with RWI.  *Id.* ¶¶ 19-35.  Defendants terminated Plaintiffs from their employment at RWI in January, 2011.  *Id.* ¶¶ 15, 49; *see also doc. 5* ¶ 15.

Plaintiffs brought suit on ten counts, including counts predicated on breach of the implied covenant of good faith and fair dealing, various other alleged breaches of

---

[1] The Court ruled on these motions at the hearing.  *Doc. 94.*  This order memorializes that ruling.

contract, conversion, defamation, and violation of both state and federal securities regulations.  *Id.* ¶¶ 67-112.

On March 16, 2012, Defendants filed an answer to Plaintiffs' complaint.  *Doc. 5.* Defendants agreed as to the general contours of the factual background of the case as set forth above.  *Id.* ¶¶ 8-22.  Defendants filed an amended counterclaim.  *Doc. 18.* Defendants accused Plaintiff of having, while employed by RWI,

> used their positions to embezzle RWI's monies to fund their extravagant lifestyles, defraud their investors and business partners, and exploit RWI's business relationships for their own benefit.  After being terminated for this behavior and no longer able to raid RWI's coffers, [Plaintiffs] changed their tactics in an attempt to destroy RWI by defaming RWI and its employees, interfering with RWI's business activities, competing against RWI, and improperly seeking to solicit RWI's employees in violation of their restrictive covenants.

*Id.* ¶ 2.  In their counterclaim, Defendants allege that Plaintiffs attempted to divert checks made payable to RWI, that they charged personal expenses to RWI credit cards, that they used company funds to pay personal expenses, that they used RWI equipment and labor for their personal use, that they improperly paid bonuses to themselves, and that they violated their restrictive covenants through two companies they controlled, Tex Mex Services, LLC, and Tex Mex Rentals, LLC.  *Id.* ¶¶ 43-74.  In particular, Defendants allege that Plaintiffs used the Tex Mex ("TM") companies to compete improperly for the business of Conoco Phillips, and intended to compete improperly for the business of Chevron, Occidental Permian, and Southwest Royalties.  *Id.* ¶¶ 75, 91. Defendants set forth factual allegations as to how Plaintiff R. Todd interfered with their

employees, and asserts that he thereby "induced, conspired with and aided and abetted the RWI employees to breach their duty of loyalty to RWI." *Id.* ¶¶ 76-90. Defendants bring claims for breach of fiduciary duties, conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with existing and prospective contractual relations, conspiracy to violate the duty of loyalty, and unjust enrichment.

During discovery, Defendants served four subpoenas that are the subject of the present motions. Defendants served the first two on Plaintiffs' bank, and the second two on Plaintiffs' two of Plaintiffs' business partners.

As Plaintiffs describe it, "Defendants served [Plaintiffs'] bank, the First American Bank, with two identical subpoenas on May 23, 2012." [2] *Doc. 66*. The subpoenas commands the Bank to produce:

> All banking documents concerning, relating to or referring to the accounts of [Plaintiff] Ronny Dee Todd (or Ronnie Dee Todd), [Plaintiff] Lisa Todd, Tex Mex Rentals, LLC and/or Tex Mex Services, LLC, including monthly bank statements recording or reflecting check transactions, images of cancelled checks, debit card transactions or ledgers, and credit card transactions or ledgers from March 20, 2007 to the present, all banking documents concerning, relating to or referring to RWI Construction, Inc., Ron's Welding, all checks made out to RWI Construction, Inc., RWI, Ron's Welding, Ronnie Todd, Ronny Todd or Lisa Todd.

*Id.*, Ex. A at 3.

---

[2] The Court need not address the question of whether these documents should properly be construed as two identical subpoenas or simply two copies of one subpoena.

Subsequently, Defendants served subpoenas on Conoco Phillips ("Conoco") and Chesapeake Energy ("Chesapeake"). *Doc. 70*, Ex. A at 3, 8. These subpoenas contained identical language commanding Conoco and Chesapeake to produce "[a]ny and all invoices, receipts, contracts, agreements and copies of checks payable to Ronny Todd, dba Tex Mex services, LLC and/or Tex Mex Rentals, LLC[.]"  *Id.*

Plaintiffs' motions argue that the Court should quash or limit the subpoenas. *Doc. 66* at 7; *doc. 70* at 8.

Previously, this Court ruled on whether or not to grant Defendants' motion for a temporary restraining order or preliminary injunction. *Doc. 63*. For the purposes of that ruling, the Court found that the noncompete agreements ended on March 30, 2012. *Id.* at 5.

### <u>Analysis</u>

The Court addresses the motions to quash under Federal Rule of Civil Procedure 45(c)(3), which governs the quashing of a subpoena. Fed. R. Civ. P. 45(c)(3). This Court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(c)(3)(A)(iii). On motion, this Court may quash or modify a subpoena if it requires "disclosing . . . confidential . . . commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i).

## Standing

"A party generally lacks standing to seek to quash a subpoena issued to a nonparty.  But a party has a right to object to a subpoena if he/she has a claim or privilege with respect to the materials being sought by the subpoena." *Hendricks v. Total Quality Logistics, LLC* 275 F.R.D. 251, 253 n.1 (S.D. Ohio 2011) (internal citation, quotation marks, and brackets omitted).  "A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003).

Although Defendants served the subpoenas on non-parties, Plaintiffs have a claim or personal right with respect to their banking records and their companies' business records.  Therefore, under the foregoing standards, Plaintiffs have standing to challenge the subpoenas.

## Confidential Information

Federal Rule of Civil Procedure Rule 45(c)(3)(B)(i) provides that the court may quash or modify a subpoena if the subpoena requires disclosure of "a trade secret  or other confidential research, development, or commercial information." . . . Although the Federal Rules of Civil Procedure do not define the term "commercial information," [federal courts have] recently defined the term to mean "information, which, if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."

The party moving to quash a subpoena under Rule 45(c)(3)(B)(i) has the burden to establish that the information sought is confidential and

that its disclosure will result in a clearly defined and serious injury to the moving party.  The claim "must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest this claim."

*Transcor*, 212 F.R.D. at 592.

Under the foregoing standards, Plaintiffs have the burden to establish that the material sought by the subpoenas is confidential and that its disclosure would result in a clearly defined harm to Plaintiffs.  At the hearing on the present motions, the Court questioned Plaintiffs on these points, but Plaintiffs failed to provide a persuasive explanation that would justify treating the documents as confidential.  Based on the parties arguments at the hearing, it appears to the Court that the banking records and business records are essentially typical records of their kind, and that they do not contain any trade secrets or other highly sensitive information.  The Court finds that the material sought by the subpoenas is not protected under Rule 45 as confidential information.

**Relevance**

Fed. R. Civ. P. 45 does not include relevance as an enumerated reason for quashing a subpoena.  It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.  Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  A request for

discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.  When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.

*Transcor*, 212 F.R.D. at 591-92.

"Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena.  Courts, however, have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26."  Rule 26(b)(1) provides in relevant part that "[p]arties may obtain   discovery regarding any non-privileged matter is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

*Total Quality*, 275 F.R.D at 253 (internal citation omitted, alterations to internal quotations in original).

The subpoenas seek three categories of documents: (1) Plaintiffs' personal banking records, (2) Plaintiffs' businesses' banking records, and (3) Third-party businesses' records of their transactions with Plaintiffs' businesses.  All three of these categories are relevant to Defendants' counterclaims that Plaintiffs improperly appropriated RWI funds, tortuously interfered with their business relationships, and improperly competed with Defendants in violation of their noncompete agreements if such conduct occurred.  The subpoenas do, however, appear to be overbroad.

As to Plaintiffs' personal banking records, it is entirely plausible that those records might contain evidence that Plaintiffs had embezzled funds, bribed third parties for assistance in improper conduct, or spent or received funds in ways that would violate their noncompete agreements.  However, notwithstanding this relevance, subpoenaing five years' of banking records is overbroad at this time.  The Court will limit the disclosure of Plaintiffs' personal banking records to the period beginning one year prior to Plaintiffs' termination from employment at RWI, and ending one month after the apparent expiry of Plaintiffs' noncompete agreements.  That is, the subpoenas shall be limited to include only the period beginning on January 10, 2010, and ending April 30, 2012.  The Court will not, however, limit the subpoenas as to Plaintiffs' businesses' banking records.  Defendants have alleged that Plaintiffs' used these businesses to compete improperly with RWI, and the Court finds no compelling justification to limit the subpoenas of their business records.[3]

Defendants allege that Plaintiffs' used their businesses to compete improperly with Defendants for business with Chesapeake and Conoco.  This rationale justifies the subpoenas on the records of Chesapeake and Conoco's records of their business dealings with Plaintiffs' businesses.  However, given that the noncompete agreements expired on March 30, 2012, it appears that materials dated more than a month after March 30, 2012, are not sufficiently relevant to be subpoenaed.  Therefore, the Court

---

[3] No time limit restriction is necessary for these documents because the businesses were only in existence during the relevant time period.

9

will limit the effect of the subpoenas on Chesapeake and Conoco to materials dated on or prior to April 30, 2012.

Wherefore, **IT IS HEREBY ORDERED** that the motion, (*doc. 66*), to quash or limit the subpoena served on the Bank is GRANTED IN PART: as to Plaintiffs' personal banking records, the subpoenas shall be to the period from January 10, 2010, to April 30, 2012; in all other respects the motion is DENIED: the Bank shall produce the banking records for Plaintiffs' companies as required by the subpoenas;

**IT IS FURTHER ORDERED** that the motion, (*doc. 70*), to quash the subpoenas on Conoco and Chesapeake is GRANTED IN PART: the timeframe of the subpoena shall be modified so that Conoco and Chesapeake shall not provide materials dated later than June 30, 2012; in all other respects, the motion is DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE